BENJAMIN STORY *v.* CHARLES A. LUZENBERG and *Wife.*

Where the damages awarded to the plaintiff, in an action instituted by him, against an
attorney of defendants, they being cited in warranty, for the amount stipulated to be
paid to plaintiff in an agreement signed by defendants and plaintiff, and lent by the lat-
ter to the attorney, and not returned, were only for the temporary conversion of the
agreement, which was produced on the trial, the signatures torn off ; the judgment
will be no bar to an action against defendants to enforce the agreement itself.

APPEAL from the District Court of the First District, *Buchanan,*
J. The plaintiff alleges in his petition : that in the year 1832, he
purchased from Mary Luzenberg, then the wife of one Fort, now
married to the defendant Charles A. Luzenberg, a lot of ground
in the city of New Orleans, from a part of which he was subse-
quently evicted by a judgment of the Circuit Court of the United
States, for the Ninth Circuit and Eastern District of Louisiana
in a suit instituted against him by Edward Livingston. That
having commenced an action against Mary Luzenberg, to
obtain compensation for the property of which he had thus been
evicted, a compromise or agreement was entered into between
himself and Mary Luzenberg and her husband, for the purpose of
adjusting amicably all the matters in dispute between them ; by
which it was stipulated that certain persons should be appointed
to fix the proportional value of the part of the property recovered
by Livingston ; that the value thus ascertained, and one-half of

the rents which the petitioner was condemned to pay to Livingston, and one-half of all the legal costs paid by him, with interest at seven per cent a year from the time the suit was commenced to the date of the agreement, should be considered as the just amount of petitioner's claim ; and that Luzenberg and wife should confess judgment for that amount as due by them, *in solido*, to the petitioner, payable in fifteen equal annual instalments, with interest at seven per cent a year from the date of such judgment, until paid.

The petition further alleges :   That the estimate was made according to the provisions of the agreement, by which it appeared that the loss sustained by the petitioner in the value of his land, was $33,500 ; and that the half of the sums paid for rents and legal costs, amounted to $22,424, making together $55,924, with interest at seven per cent per annum from the 5th of June, 1839, till paid ; for which he is entitled to a judgment under the agreement, but with which agreement the defendants refuse to comply.   The petitioner concludes with a prayer for the specific performance of the agreement, and for a judgment against the defendants, *in solido*, for $55,924, with interest at seven per cent per annum from the 5th June, 1839, till paid.

The defendants answered separately, but the case was decided on an exception in which both united.   It alleges, that the plaintiff, in an action instituted before the District Court of the First District, (No. 20,417,) against Lucius C. Duncan, obtained a judgment for the sum of $5000, for the value of the instrument of writing, or agreement, described in his present petition, on the averment that Duncan had converted the same to his own use.   That the jury assessed the value of the said writing at $5000 ; that the judgment remains in full force, and has been paid on an execution issued by the plaintiff.   That the defendants were made parties thereto, and a judgment for a like amount rendered against them, in favor of Duncan, which they also satisfied ; and that the judgment so rendered is a bar to the present suit, the matter being *res judicata.*

The record in the suit of *Story* v. *Duncan,* was introduced in evidence.   The petitioner in that action claimed $62,500 of the defendant, alleging that he was the owner and possessor of certain articles of agreement entered into between himself and Lu-

zenberg and wife, by which the latter stipulated to confess a judg-
ment in his favor for $62,500, being the amount of the purchase
money he had paid to Mary Luzenberg, for the part of the proper-
ty from which he had been evicted by Livingston, with the rents
he had been compelled to refund, and the costs to which he had
been subjected, &c ; that, at the request of the defendant Duncan,
the agreement had been delivered to him by plaintiff's agent on
his promise to return it ; and that, though amicably requested, he
had failed to do so, having converted it to his own use.  Duncan
answered, after a general denial that he had acted as counsel for
Luzenberg and wife ; that as such, he had frequent communica-
tion with plaintiff's attorney touching his claim against Luzen-
berg's wife ; that the *projet* of an agreement had been signed, in
duplicate, by the plaintiff and Luzenberg and wife, the terms and
stipulations of which, being minutely detailed, he did not accu-
rately recollect ; that at the request of his clients he had called
on the attorney of the plaintiff to procure a loan of the duplicate
of the agreement belonging to the plaintiff, then in the hands of his
attorney, the object of the respondent's clients being, as he was
informed, to compare it with the duplicate in their possession, as
they had discovered certain interlineations which they supposed
affected their interest ; that plaintiff's attorney handed him the
duplicate, which he delivered to his clients, and " that thereupon,
after a full conference in reference to said *projet* of an agreement,
and to the claim generally of the plaintiff against them, they dis-
charged him (Duncan) from all further professional agency in the
matter of the claim of the plaintiff against them, retaining in their
possession all the papers in relation thereto, and, among them, the
said *projet* of an agreement ;" that immediately after he called on
plaintiff's attorney, and informed him, of the result of his confer-
ence with his clients ; that they were in possession of his duplicate
of the agreement, and that they would through other counsel, con-
fer with him on the subject ; that these facts were immediately
communicated to the plaintiff by his attorney, and that, therefore,
the charge that he is in possession of the said duplicate, or has
any control over it, or has in any sense, converted the same to his
own use, is false and defamatory, &c.  The defendant further
averred, that if the plaintiff has any claim against him, Luzenberg

and wife are bound to warrant and defend him in the premises ; and he prayed that they might be made parties to the suit, and be ordered to produce in court the *projet* of agreement above mentioned.

Luzenberg and wife answered separately, denying so much of the petition of Story and of Duncan's answer, as is not expressly admitted to be true in their answer.    They admitted that they had signed a paper such as that described in Duncan's answer.    Charles A. Luzenberg further averred, that he had been informed by Duncan, his counsel, that the instrument was only a *projet*, or form of agreement, not binding as such ; that he signed the same through ignorance of his rights and in error of law, and that he was, consequently, not bound thereby ; that the agreement was, as to him without consideration, he being in no way liable for any debt of his wife contracted before marriage ; and that he never received the paper, or had any thing to do with it personally, but that he ratified and adopted the acts of his wife mentioned in her answer. Mary Luzenberg admitted that she had sold the property referred to in the plaintiff's petition, and that she had signed a paper in relation to his supposed claims growing out of the eviction by Livingston, which paper she was advised by her attorney, Duncan, was a *projet* of an agreement intended as the basis of a settlement to take place subsequently, between the plaintiff and herself and husband ; she alleged that as the *projet* had not been fully executed by the plaintiff, she believed she had a right to recede therefrom ; that she was not entirely satisfied with the professional opinion given by her attorney, Duncan ; that the paper was, at her own request, handed to her by Duncan ; that it was fairly obtained by her as her sole property, without any participation or knowledge on the part of her husband ; that Duncan had not possession of the paper for some time previously to the commencement of the suit ; and that he had not since had the possession of it. She denies Story's right to the paper, or that she has contracted any obligation towards him in consequence of its execution ; and offers to produce the paper on the trial, admitting that it was signed by Story, her husband and herself, and that she cut from it the two last signatures.    Both herself and husband declare, in their answers, their readiness to submit to any legal liability re-

sulting from signing the said paper, and to answer to any suit which the plaintiff may institute thereon, and to produce the paper on the trial of any such suit.

The duplicate, from which the signatures had been cut, was produced on the trial, and it was admitted that it had been signed by Story, and Luzenberg and wife. Its contents are recited substantially in the plaintiff's petition. R. H. Chinn who had acted as the attorney of Story, testified, that Duncan applied to him to borrow the duplicate of the agreement, stating that his brother was absent, and their copy locked up. He could not undertake to repeat the expressions of the defendant ; but his impression was, that Duncan wished to obtain the copy in order to prepare the decree of court provided for in it. He handed the copy to him without hesitation. The next morning Duncan informed the witness that Luzenberg and wife were dissatisfied with him, and that he was no longer their counsel. Witness then asked for the return of the paper, and thinks that Duncan told him that he had left it with Luzenberg and wife, and that he would procure it and return it. At his next interview with Duncan, the latter informed him that Mr. Hennen was the counsel of Mrs. Luzenberg, and that he had the paper. Witness called on Hennen, who stated that he had never seen the paper. He afterwards called several times on Duncan, who repeatedly assured him that he would procure the paper. This witness stated further, that at the time the agreement was borrowed, nothing was said in relation to any discrepancy between the duplicate copies ; and that had any such suggestion been made, he would not have given up his copy, but would have required the other parties to bring theirs to him.

The record of the suit of Livingston against Story was offered in evidence by the plaintiff, on the trial of the suit against Duncan, and Luzenberg and wife, as intervenors ; and the testimony of Banks, one of the appraisers named in the agreement, was introduced to prove the value at which the appraisers estimated the property, from which the plaintiff had been evicted. Hennen, the attorney of the defendants Luzenberg, affirmed that he had never had· the agreement in his possession, and never tendered it to Chinn. The case was submitted to a jury, and the ndge, at the instance of the plaintiff's counsel, charged them :

" That if they believed the evidence they would be authorized by law, to find a verdict against the defendant, to the extent of the liability of Mrs. Luzenberg to Mr. Story, under the contract mentioned in the plaintiff's petition." There was a verdict in favor of the plaintiff against Duncan for $5000, and in favor of the latter for the same amount against Luzenberg and wife, and judgment accordingly. The judgment was signed on the 17 February, 1842. Both the defendants Duncan, and Luzenberg and wife, moved for new trials, which were refused. On the 26th of February, Charles A. Luzenberg prayed for a suspensive appeal, and executed a bond therefor. On the 3d of March the clerk was directed by Hennen, as the attorney of C. A. Luzenberg, not to issue citations of appeal, or to take any further steps until requested. A *fi. fa.* was issued against Duncan on the 7th of March, and on the 18th of April, returned satisfied. On the 9th of March, Duncan acknowledged on record, that he had received satisfaction of his judgment against Luzenberg and wife. Such is the substance of the record in the suit of Story against Duncan, No. 20,417, of the docket of the District Court of the First District.

The Judge of the District Court, before whom the present case was also tried, was of opinion that the exception *rei judicatæ* should prevail, and he dismissed the action. From this judgment, Story has taken this appeal.

*Chinn* and *Grymes,* for the appellant, cited 3 Modern Rep. 1. *Wheelock* v. *Wheelwright,* 5 Mass. 104. *Bond* v. *Ward,* 7 Ib.134. *Murray* v. *Burling,* 10 Johnson, 172. 2 Ib. 380. 2 Starkie, 837, 838, ed. 1836.

*Hennen,* for the defendants. The petition in this suit was filed on the 15th of March, 1842, and prays for the specific execution of a certain agreement entered into by the plaintiff of the one part, and the defendants of the other. The defendants filed separate answers, and pleaded a former judgment and recovery on the same cause of action, under the following circumstances. On the 29th of June, 1841, the plaintiff in this suit commenced an action (No. 20,417,) against L. C. Duncan, in the District Court of the First Judicial District of the State of Louisiana, charging him with having *converted to his own use,* the articles of agreement upon which the present suit is founded, and claiming damages *to the*

*value* of the plaintiff's interest in the agreement; to which suit, the defendants C. A. Luzenberg and wife were *made parties in warranty*. Judgment was rendered for $5000 against Duncan, and for the like sum against the present defendants in favor of Duncan. *Satisfaction* of these judgments was acknowledged by the plaintiff and by Duncan. The defendants in this suit set forth these proceedings, and plead that they are a bar to any other action on the said agreement. The plea was sustained by the judgment of the court below, from which the plaintiff has appealed.

The defendants, in support of that decision, allege that the judgment and satisfaction in suit No. 20,417, effected a complete extinguishment of all the plaintiff's rights in said agreement, and that immediately upon the satisfaction of their judgment, the agreement by *operation of law*, became the property of the defendants, and this :

I. Because the suit No. 20,417, is in fact an action of *trover*, and subject to the rules by which that action is governed. The petition contains all the substantial allegations which constitute the declaration in trover. It charges that the plaintiff was *in possession* of the chattel, at the time of the conversion. This is a necessary averment in trover. See 1 Chitty's Pleadings, 150, and 15 Petersdorff's Abridgment, 201. It sets forth the *value* of the thing converted. It charges that the defendant unjustly detains the chattel after a *demand*, and that he has converted the same to his own use. 1 Chitty's Pleadings, 155. It asks for *damages* for the conversion, and does not pray for the restoration of the thing itself; thereby assimilating it to the action of *trover* instead of *detinue*. The distinction between trover and detinue is, that the former is for the recovery of damages to the *value of the thing converted*, the latter for the recovery of *the thing itself*. See 1 Chitty's Pleadings, 148. 3 Wils. 336. Willes, 120 ; and the opinion of Lord Mansfield in 1 Burr. 31. See the form of declaration in trover in Stephens on Pleading, 48.

II. The petition is thus almost *technically* framed in trover. But the rule of the common law is settled and well defined, that the recovery and satisfaction of damages in the action of trover,

changes, by *the act of law*, the title of the property converted. The authorities on this point are uniform. In the language of Chancellor Kent, " on a recovery by law in an action of trespass or *trover* of the value of a specific chattel, of which the possession has been acquired by tort, the title of the goods is altered by the recovery and is transfered to the defendant, and the *damages re-covered* are the *price* of the chattel so recovered by the operation of law." 2 Kent's Comm. p. 319, ed. 1827 ; 386, ed. 1840. And see 6 Johns. 168. 8 Cowen's Rep. 43. 2 Aik. Rep. 203. 2 Bailey's S. C. Rep. 466. 1 Hen. & Munf. 449. 1 Rawle, 121. 4 Rawle, 273. 1 Rice's S. C. Rep. 60. 3 Greenleaf, 250.

III. The property in the articles of agreement was thus trans-ferred to the defendants from the plaintiff, and they are entitled to all the rights which were his by virtue of such agreement. This was tacitly admitted in the judgment of the court, with which the plaintiff was satisfied, when it transferred Story's right of action, incident to the property in the agreement, to Duncan, and when, the latter being thus made the owner of the agreement, it awarded judgment against the present defendants. On no other principle could Duncan have an action against the parties cited in war-ranty. ·

The defendants are equally, by the principles of the civil law, owners of the articles of agreement after satisfaction of damages.

The civil law declares the award of damages to be a *sale* of the thing to the defendant : *Si lis fuerit æstimata, similis est ven-ditioni.* Dig. lib. 6 tit. 2. De Publiciana in rem actione, l. 7. Dig. lib. 42, tit. 4. l. 15. The Pandects are full of instances where this principle is applied. And this even in actions *in rem*, where the specific recovery of the *thing*, and not *damages*, was demanded by the plaintiff. Thus in the action of revendica-tion, where damages were awarded by reason of the defendant's refusing, or putting it out of his power to return the chattel, the satisfaction of those damages conferred on the defendant an in-defeasible title to the thing claimed. *Possessor qui litis æstima-tionem obtulit, pro emptore incipit possidere.* Dig. lib. 41. tit. 4, l. 1. And in the action " *commodati*," the same rule prevailed ; the *acceptance* of the damages by the plaintiff, transferred the property. *Si quis hac actione egerit et oblatam litis æstimati-*

*onem acceperit, rem offerentis facit.* Dig. lib. 13, tit. 6, l. 5, § 1, et in notis Gothofredi. And see the case put in the Gloss ad Dig. lib. 6, tit. 1, l. 46, *verb.* ejus rei.

But the application of this rule is more particularly interesting in the action " *rerum amotarum,*" an action for *damages,* and which resembles the suit No. 20,417 in many more important features. There, the party, against whom damages were awarded, was held to become the *owner* of the property, even though his or her possession in the first instance, had been acquired by *fraud.* And this rule was applied to the extent, that if the plaintiff became subsequently possessed of the property, he was liable to an action for its recovery by the former defendant. And the same general rule is urged in support of the doctrine, viz. that by payment of damages, the chattel had been transferred to the defendant : *Qui litis æstimationem suffert, emptoris loco habendus est.* Dig. lib. 25, tit. 2, l. 22. And further in the case of *depositum* or *commodatum : In depositi vel commodati judicio, quanquam dolo adversarii res absit, condemnato succurri solet, ut ei actionibus suis dominus cedat.* Dig. lib. 42, tit. 1, l. 12.

This doctrine has received the sanction of modern writers of high eminence.

Voet in his commentary on the Pandects, observes that " the party *converting property to his own use* becomes, after satisfying the damages, the proprietor of the thing converted, and has his action for the possession against third parties." *Ea vero æstimatione præstita, amovens quidem emptoris loco est, dominiumque nanciscitur, si is cui æstimatio soluta dominus fuerit, sic ut ob id etiam adversus tertios possessores habeat in rem actionem.*" Voet, Com. in Pand. ad lib. 25, tit. 2, l. 22, vol. 2. p. 115.

The learned Cujas is even more pointed on the same subject. " *Sed sunt quatuor vel quinque casus quibus Publiciana datur adversus dominum ; nec obstat agenti exceptio dominii. Unus est in hac lege, cujus ratio est elegans et evidens : nam si non esset efficax actio Publiciana adversus dominum, dominus haberet et rem et æstimationem. Quod est iniquum. Imo vere ut idem Papinianus in fine demonstrat, non auditur dominus cum quo agitur Publiciana, si velit, ne rem restituat omnia retro agere et retractare, id est, si paratum se esse dicat pretium et litis æestimationem res-*

*tituere, se malle rem quam pretium, pretium redditurum, modo sibi res non auferatur Publiciana : non audietur, quia in potestate venditoris non est recedere a venditione, quæ perfecta est invito emptore : litis æstimatio venditio est. . . . . . Emptor est qui solvit pretium rei, etiamsi dominus non fecerit pretium rei, sed judex : sunt necessariæ quædam venditiones. Ergo is qui litis æstimationem pertulit, actione Publiciana, invito domino, rem auferet."* Cujas Com. in lib. 12, Quæst. Æmil. Pap. ad leg. 63. vol. 4, p. 289, C. Oper.

Merlin affirms the same principle in the article "Du Prêt" in the Répertoire. *"Par le moyen d'un tel paiement, l'emprunteur demeure subrogé aux actions du prêteur pour revendiquer la chose, contre ceux qui peuvent l'avoir entre leurs mains.* Merlin, Répertoire, vol. 13, p. 34, verbo "Prêt."

The opinion of Pothier coincides with these authorities. *"Lorsque le possesseur qui, par sa faute, s'est mis hors d'état de restituer la chose revendiquée, paie au propriétaire la somme à laquelle ont été réglés les dommages et intérêts, le propriétaire est censé lui abandonner tout le droit qu'il a dans cette chose. C'est pourquoi cet ancien possesseur, qui a payé, peut, comme étant aux droits du propriétaire à qui il a payé cette somme, exercer à son profit et à ses risques, contre les tiers qui se trouveraient en possession de cette chose, l'action de revendication que le propriétaire eût pu exercer ; et si le propriétaire qui a reçu la somme s'en trouvait depuis lui-même en possession, l'ancien possesseur qui lui a payé cette somme, serait bien fondé à intenter contre lui la demande, pour la lui faire délaisser."* He cites the Digest to the effect. Pothier, Propriété. No. 364.

Nor would the rule of the civil law permit the original proprietor, who had repossessed himself of the chattel, after payment of damages, to retain it on the ground that the damages were inadequate, and that he preferred to keep the property and return the sum paid. Such payment had made an absolute transfer, and under no circumstances could the former proprietor be permitted to continue as owner, when thus divested. The opinion of Cujas cited above is expressed upon this point, which is confirmed by Pothier. The latter author in the place just above quoted says : *"Le propriétaire ne serait pas même reçu en ce cas de ren-*

*dre la somme qu'il a reçue, pour se dispenser de rendre la chose à celui de qui il a reçu la somme. Nec facile audiendus erit, ajoute de suite Papinien, si velit pecuniam quam ex sententia judicis periculo judicati recepit, restituere."* Dig. lib. 1. 63. tit. de rei vind.

This principle is again referred to and enforced by the same author in his treatise, *Des contrats de Bienfaisance. L'emprunteur ayant payé au prêteur le prix de la chose prêtée, est subrogé aux actions de prêteur pour la revendiquer contre qui il en trouvera en possession: et en se la faisant délaisser, il en acquiert la propriété.* Pothier, Contrat de Bienfaisance, No 68.

Thus by the civil as well as the common law, the defendant, on satisfying the damages, becomes the proprietor of the thing converted. The defendants in warranty in the suit No. 20,417, having paid the value of the agreement, as it was assessed by the jury, became by such payment the *owners* of the agreement, and the plaintiff, having *accepted* the price which the judgment of the court placed upon it, is barred by such acceptance from seeking a *second* payment of its value.

But if the suit No. 20,417 be considered simply as to the *internal* evidence it offers, the court will feel itself bound to apply the rule, that the damages were the price of the chattels, and transferred the property.

1. The petition is for the recovery of *damages*, and not for the *thing*. The plaintiff *abandoned* his right of property to the tortious converter, and sought remuneration only in the award of damages by the court. The *supposed* value of the agreement was set out in the petition, and it was this supposed value which the plaintiff claimed as the *measure* of his damages. So that the question was distinctly presented to the jury, "what is the true value of the agreement to the plaintiff?" But having thus *waived* the recovery of the specific chattel, and contented himself with being *paid* for it by the action in trover, will he now be permitted to assert the rights which he himself has rejected?

2. The plaintiff having sued for the *value* of the agreement, offered evidence upon the trial on this point. It was upon this evidence that the verdict and judgment were founded: and, if the plaintiff is now dissatisfied with that judgment, he must attribute

it to the proper cause, to wit, the loose and improper character of the evidence he introduced. The agreement contained *mutual* stipulations. It acknowledged, at least, on the part of the plaintiff, that certain sums had been paid which were to be deducted from the amount found due. The plaintiff did not show that he had performed, or was ready to perform his part of the agreement, which *alone* would entitle him to bind the defendants. The proof also of the arbitration and award was entirely deficient. The arbitration was by *two* persons, and the plaintiff produced but one on the trial. Nor did he show that *joint* notice had been given to the Luzenbergs, or to their agent, of the award. No evidence was offered to show what amounts the plaintiff paid the heirs of Livingston, which formed one of the items stipulated in the agreement to be paid. But the principal evidence introduced was relative to the amount of costs paid by the plaintiff, and which was allowed him by the jury. The jury was further expressly charged by the direction of the plaintiff, that if they believed the plaintiff's witnesses, they were bound to return a verdict in damages, *equal to the value* of the plaintiff's interest in the agreement. Upon this charge the verdict for $5000 was rendered. The plaintiff was satisfied with the verdict, and did not, as he might have done, had it been against law or evidence, seek to disturb it. He *acknowledged satisfaction* upon it. Did he not thereby admit that the damages returned were the *true value* of his interest? Had he not the means, had it been otherwise, to correct the error of the jury upon a new trial? And having assented to the justice, and acknowledged satisfaction of the judgment, can he ask of this court to review that case, and make up to him the supposed deficiency?

The condition of the plaintiff has been anticipated by the civil law. It has been seen that he would not have been permitted to retain the property, under the sense of the *paucity* of the damages. It was not *his own idea* of his interests, which would always be excessive, which determined the amount the defendants had to pay, but it was the judgment of the court. It was, in the words of Pothier, " *la somme à laquelle ont été réglés les dommages et intérêts,*" that the defendant had to satisfy as its value. And the

expression of Papinian, cited in the Digest is the same. *Pecuniam, quam ex sententia judicis periculo judicati, recepit.*

Even if the court were convinced that full justice had not been done to the plaintiff in the former suit, it would be bound to apply that salutary principle of the civil law to this case : "*Rei judicatæ natura est, ut sit immutabilis, etiamsi male judicatum sit.*" But it is clear, that this case comes within the equitable principle cited in *notis Gothofredi* on the action "*depositi*," in the Digest, "*Æquitas hæc rationem habet ut scil. qui deposuit, teneatur ei cedere actiones, quia est iniquum ut res suas a depositario recuperet, et pretium rei simul accipiat.* Dig. lib. 42, tit. 1, ad leg. 12, in notis, Goth. No. 2.

MORPHY, J. On the tenth of March, 1832, the widow Fort, now the wife of. Charles A. Luzenberg, sold to Benjamin Story an undivided moiety of a parcel of ground, for the sum of fifty thousand dollars payable in five years, and bearing interest at the rate of seven per cent per annum. The purchaser having been evicted of a part of the premises, under a judgment of the United States Circuit Court for the Eastern District of Louisiana, rendered in a suit brought against him by the late Edward Livingston, instituted an action against his vendor, Mary Luzenberg, in 1839, to be compensated for the loss of the property, the rents, costs, &c. Pending this suit, an agreement in writing was entered into between, and was signed by, Benjamin Story and the said Charles A. Luzenberg and his wife, for the purpose of making an amicable adjustment of all Story's claims for and on account of the property bought, and lost by eviction. Among other stipulations it was agreed, that Thomas Banks and Peter Laidlaw should be appointed to fix the relative value of the portion of the property recovered by the heirs of Livingston ; that the value thus fixed, together with one moiety of all the rents and costs paid by Story, with interest at the rate of seven per cent per annum from the date of the eviction to that of the agreement, should constitute the measure of the purchaser's claim ; and that when their indebtedness should be thus ascertained, the said Charles A. Luzenberg and his wife, should confess a judgment for the amount thereof in favor of Story, payable in fifteen equal and annual instalments, bearing an interest of seven per cent per annum from

the rendition of the judgment until paid. A short time after, the defendant's counsel, Lucius C. Duncan, Esq., called upon the counsel of Story, and asked of him to hand him his duplicate of the articles of agreement entered into between their clients, stating that his copy of the same could not be procured at that time. The paper was handed to Lucius C. Duncan. On the next morning he informed Story's counsel that Luzenberg and his wife had become dissatisfied with him, and that he was no longer their attorney ; that he had left the agreement with them, but that he would get it back and return it to him ; this not having been done, after repeated demands, a suit was brought against Duncan, claiming of him damages to the extent of $62,500, on the ground that he had converted the agreement to his own use, and refused to return it according to his promise and undertaking. Duncan, after various matters of defence, stated that Luzenberg and wife, when they employed other counsel in their suit against Story, retained in their possession all the papers belonging to the case, and, among them, the articles of agreement that he had handed to them at their request. He prayed that they might be cited to defend him in the suit, and to produce the agreement so delivered to them, and that he be held harmless. Luzenberg and wife filed separate answers pleading various matters, but both acknowledging that they had signed the articles of agreement, which they say were represented to them, by their counsel, as a mere project of an agreement, not binding on them. They both aver their readiness to answer to any suit, which Story may think proper to institute against them in relation thereto, and their willingness to produce on the trial the duplicate, from which it is admitted that their signatures had been cut off by Mrs. Luzenberg. There was a verdict and judgment in that suit for $5000 in favor of Story against Duncan, and one for the same sum in favor of Duncan against his warrantors Luzenberg and wife, which judgments were satisfied. The present action is now brought to obtain the specific execution of the agreement, the material parts of which have already been stated. The petition alleges that Thomas Banks and Peter Laidlaw have made the estimate therein contemplated, from which it appears that plaintiff's loss on the land purchased for the portion of which he has been evicted, is $33,500, and that the

moiety of the sum he has paid to the heirs of Livingston for the rents and the costs, amounts to $22,424, forming the aggregate amount of $55,924, for which judgment is prayed *in solido*, against the defendants, with interest at seven per cent per annum from the 5th of June, 1839.  To this demand a peremptory exception was filed, setting up as a bar to it the judgment in the suit against Duncan, to which the defendants were made parties, and in which the plaintiff obtained the sum of five thousand dollars as the value of the instrument of writing or agreement described in his petition, and alleged to have been converted by the said Duncan to his own use.  From a decision of the Judge below sustaining this exception, the plaintiff prosecutes the present appeal.

A number of highly respectable authorities have been quoted by the appellees' counsel, in support of the well known rule, that on a recovery, in an action of trespass or trover, of the value of a specific chattel, the title to it is altered by the recovery, and is transferred to the defendant by operation of law.  The maxim, *solutio pretii emptionis loco habetur*, belongs, it is believed, to almost every system of jurisprudence, being founded in justice and in reason, which are the bases of all laws.  As far back as the year 1818 this court held, in *Jourdan* v. *Patton*, that if, for an injury done to her slave, the plaintiff recovers his full price or value, the property is transferred to the defendant on payment of the judgment.  5 Mart. 617.  The principles relied on by the appellees being then incontrovertible, the question in this case appears to us to be entirely one of fact :  Did the jury assess and award to the plaintiff in the suit pleaded in bar, the value of the agreement alleged to have been converted by Duncan ?  From the pleadings, the evidence in the record, and all the attending circumstances, we believe that they did not, and that the damages of $5000 were allowed, not for the value of the instrument of writing, or of the claims which could be enforced under it, but for its temporary conversion.  It is true that the Judge, in his charge, instructed them, that they were authorized by law to find a verdict against the defendants to the extent of Mrs. Luzenberg's liability to Story under the contract.  This, they properly refrained from doing, the paper having been surrendered on the trial al-

though in a state of mutilation, and the warrantors having averred their readiness to litigate their rights with the plaintiff, in relation thereto, in any suit he might think proper to institute against them. These averments were evidently intended by the defendants to mitigate the damages against Duncan, who had called them in warranty, as being in possession of, and refusing to surrender the agreement, and they produced the desired effect. But for these averments, and the production of the contract upon which the present action is brought, the jury might, and probably would have given a verdict for the whole amount of the defendants' liability to Story, which they would have had to discharge without having the benefit of the long terms of payment, and the other facilities secured to them by the agreement. These averments may be viewed in the light of, and must have the effect of a reservation, securing to the plaintiff the right which he would not perhaps otherwise have had, of urging his claims against the defendants, under the agreement, in a subsequent suit. It is clear that it was so understood by the jury when they awarded an amount of damages, which no one at that time supposed to be an assessment of the value of the agreement, or of the claims of the plaintiff under it. The warrantors struggled to obtain a new trial, and failing in that attempt, they took a suspensive appeal. It is true that this appeal was afterwards abandoned, and the judgment satisfied; but not, perhaps, until it had occurred to them that, by the payment of its amount, they might possibly succeed in setting it up as a bar to any further claim on the part of the plaintiff. It has been held that in an action of trover for a permanent conversion, it is competent to the plaintiff to show that the damages were given merely for the temporary conversion, and not as the value of the chattel. 3 Starkie, p. 1508 and note (z) ed. of 1828. In the present instance we are satisfied, from all the circumstances of the case, that the damages awarded were only for the temporary conversion of the contract or agreement, and that, after having made averments tending thus to mitigate the damages, and reserving, in some manner the plaintiff's right to bring the present suit, the defendants should not be permitted to set up a plea inconsistent with such averments, and thus evade a fair investigation of plaintiff's claims against them.

It is therefore ordered that the judgment of the District Court be reversed ; that the exception set up by the defendants be over- ruled ; and that this case be remanded for further proceedings. The appellees to pay the costs of this appeal.